IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------

IN RE SYNGENTA MASS TORT ACTIONS

------------------------------------------------------------   Judge David R. Herndon

This Document Relates to:

*Poletti et al. v. Syngenta AG et al.* No. 3:15-
cv-01221-DRH

## DEFICIENCY ORDER

This matter is before the Court for issuance of a Deficiency Order, as described in the Court's Second Revised Scheduling and Discovery Order (Doc. 159). The Court certainly did not receive the kind of jointly agreed upon categorization of issues that it expected.  Ultimately, the categories submitted by the defendant in its reply were relied upon by the Court for convenience and since the categories seemed to fit the issues. Furthermore, the Court only received a few exemplars. Either those exemplars adequately represent the assertions of deficiencies, or the parties will be left to speculate how the Court would rule on other types of perceived examples of "incompleteness." The Court will proceed as though the parties have enough information with this order to resolve the

disputed issues with the plaintiff fact sheets (PFSs).  Therefore, after reviewing the parties' briefing (Doc. 154, 160, 163-165), the Court **ORDERS** as follows:

**Category 1: PFSs That Reference Attachments**

**Exemplar at Doc. 164 – Diane Ebken Trust Farm, Kilburne, Illinois**: In sections A1 and A2 of the PFS, rather than providing the information on the PFS itself, the plaintiff writes "see side papers." Similarly, for section A3, the plaintiff writes "see Biggs Elevator Sheets." The referenced "side papers" are sales reports and do not delineate FSA numbers, the farm(s) county and state, acres of corn, corn variety, and whether the farm land was owned or leased. There are handwritten notes regarding this information but it is not clear how this information relates to the sales reports. The Biggs Elevator Sheets, while likely providing very important unsolicited information, do not provide the requisite itemized information (matching date, number of bushels, how priced, date priced, price, name and location of buyer, and FSA number). **Accordingly, the Court finds this PFS to be deficient**.

**Exemplar at Doc. 165 – Donald Hagedorn, Hagedorn Land Company, Farm, Waverly, Kentucky**: In A3 of the PFS, rather than providing the information on the PFS itself, the plaintiff writes "see attached settlement sheets for information." This substitution provides the examiner with an incomplete record of the itemization of the information sought in table A3. **Accordingly, the Court finds this PFS to be deficient due section A3**.

**Exemplar at Doc. 154-1 #9 and Doc. 160-1 – Haynes Farms, LLC, Cullman, Alabama:** Compare the above exemplars (Doc. 164 and Doc. 165) with these exemplars. Similar to the first exemplar (Doc. 164), there are attached sheets as substitutes for filling out the pre-printed tables at A1, A2, and A3. However, unlike the previous exemplar (Doc. 164), the sheets attached to this PFS merely recreate the tables and provide the information required. **Accordingly, the Court finds this PFS to be complete**.

**Category 2: PFSs With Missing Information**

**Exemplar at Doc. 154-5 – Mary Michels, Linn, Iowa**: The defendant provides this exemplar, which the Court hopes is an extreme example of a PFS with missing information. There should be no debate about this one, and perhaps it will do nothing to advance the ball on what the Court finds to be deficient in this category.  Nonetheless, to be clear, leaving almost every space blank, as this plaintiff did in section A1 of the PFS, is incomplete and deficient.

Stating "I have provided this info several times" and nothing more, is incomplete and deficient. This last answer seems to be applicable for sections A1, A2, and A3 since nothing else is provided for any of those requests. Failing to answer even so much as a "not applicable" for section A5 is an incomplete answer.  Were that the only blank in the entire form, it would not be sufficient to disqualify the entire form, on balance, it contributes to the entire deficiency of this form and gives one the picture of the cooperation that one may expect from this plaintiff.

Section A6 is a more significant question and it is also left blank. This is incomplete and contributes to the deficiency of the document.   Refusing the document request is problematic, as well, unless plaintiff has fully complied, as suggested by providing the discovery to counsel, who may now disclose the discovery to the defense. **Accordingly, the Court finds this PFS to be deficient as incomplete**.

**Exemplar at Doc. 160-3 – Daniel Hausladen, Hausladen Heifer Housing, New Germany, Minnesota**: The plaintiffs submitted this competing exemplar in this category as one that the defendant asserts is incomplete for missing information. Frankly, this is a sterling example of a plaintiff who clearly went to great lengths to provide the information required of him.  This PFS represents the opposite of the exemplar discussed above, and is an obvious call the other way.  It is complete in every respect. It is very curious why it appears on defendant's list. **Accordingly, the Court finds this PFS to be complete**.

**Exemplar at Doc.160-6 – Steven A. Probst, Earl & Steve Probst Farms, Inc., Effingham, IL**: Examining an exemplar that is not quite as clear as the previous two examples, the Court finds only two areas where there are incomplete answers. In section A1 the acreage of corn listed in Jasper, Illinois for FSA# 8371 is missing in the second row.  However, this information is available below on the same PFS form, and therefore this is a harmless omission.  In section A3 the date of sale information is missing.  On balance this is, as plaintiffs argue, *de minimis*,

and not sufficient to cause the dismissal of plaintiff's complaint even if without prejudice.

Moreover, for the tasks in the short run, classifying different plaintiffs for trial purposes, this plaintiff can be classified without these dates. However, plaintiff should provide a reason for not supplying the information and make every reasonable effort to provide the information. For example, if said information is not in the plaintiff's records he should so state in the PFS. If that is the situation, plaintiff should make every effort to obtain the information from a source if one is available. If, on the other hand, he simply did not have the time to poor through all his records for the information, he must put aside his aversion to "not having the time" and look through those records and provide the information in his PFS. Either way, the plaintiff must provide the information, if it is available to him, or provide the reason that said information is not available. **Accordingly, the Court finds this PFS to be complete. However, plaintiff should make every reasonable effort to provide the information left blank and provide a reason for not supplying said information.**

To put this remedy in perspective, if defendant could not answer an interrogatory upon first being presented with it because an employee could not find the information, the defendant would not expect the Court to strike its pleadings for failure to answer that interrogatory upon the first or second deadline.

Since it appears that there are a very large number of PFSs that are in dispute regarding whether there is missing information or, really, whether the missing information is fatal to the document, the Court **DIRECTS** the parties to meet and confer as necessary with the above guidance. The plaintiffs must concede when it is obvious and meet with such clients to guide them through the process so that a proper PFS can be submitted in order to get that case back on track. The defendant must more carefully examine the PFSs to recognize when one has in reality been completed.[1]

As for those that have some missing information, the parties need to be flexible. On balance, what is important is the criticality of the missing information for the immediate need of our task at hand. Plaintiffs' counsel may well be able to resolve much of this with contact with the clients to fill in the missing information by impressing on the clients the importance of providing the information and the detriment to resisting the effort.

**Category 3: PFSs With Different Forms**

**Exemplar at Doc. 154-3 Brock Melton, Number 2, Yellow, Inc., Omaha, NE**: This form is simply an exact recreation of the MDL approved form, and therefore, is exactly what is contemplated by this Court. It is not in violation of this Court's orders and is not a deficient PFS in that regard.

However, the analysis does not stop there because, rather than providing answers on the MDL approved form, the plaintiff makes the mistake of supplying

---

[1] The Court's directive, to meet and confer, does not alter in any way the deadlines set forth in the Court's Second Revised Scheduling and Discovery Order.

answers on a <u>different unapproved PFS form</u>. The plaintiff simply attaches the unapproved PFS form to the MDL approved form and calls it a day. Moreover, in answering the questions on the unapproved PFS form, the plaintiff attached separate sheets. The sheets attached to the unapproved PFS form were not provided to the Court.

The Court further notes the unapproved PFS form has a legend that states "Domina Law Group PC." To the extent this form is relied upon by the plaintiff as a PFS, it is not appropriate and is inconsistent with the order of the Court. This issue was previously litigated and the plaintiff lost on the merits. To simply disregard that order and the subsequent order is contumacious. **All such PFSs are deficient for failing to follow the Court's order.** Any such plaintiff must complete a new PFS on the MDL approved form within the cure period set forth in the Court's Second Revised Scheduling and Discovery Order.

## Category 4: PFSs With Missing 2015 Crop Information

The defendant asserts that there are a sufficient number of cases with deficiencies in the area of failure to provide 2015 crop information as to establish a separate category for it. Defendant also suggests that plaintiffs concede this deficiency and simply promise to supplement by the cure deadline. Plaintiffs have indicated, in reference to those exemplars supplied that lack 2015 crop information, to do so.  It is clear that **if 2015 crop information is not provided, it must be provided by the cure deadline, and those PFSs missing said crop information will remain deficient until the 2015 crop information is**

**provided.** Thereafter, the Court will resolve any subsequent claims of deficiency, if needed, as provided for in the Second Revised Scheduling and Discovery Order.

## Category 5: PFSs With Missing Pages

**Exemplar at Doc. 160-3 Daniel Hausladen, Hausladen Heifer Housing, New Germany, Minnesota**: Clearly, if a PFS has one or more pages of information missing it is deficient.  In this form, it is clear that the plaintiff copied both the front and back pages of the PFS.  Whether the defendant received the original or a photocopy of this document, the Court cannot speak to, however, it is unusual to see so many blank pages until one realizes what has been done. Further examination reveals the plaintiff has written on the back of one of those PFS pages, revealing the apparent logic to copying both sides of the document. The obvious point being, this is not one of the PFSs that the parties should confuse those with having "missing pages." **Accordingly, the Court finds this PFS to be complete**. **However, any PFS with pages of *actual* required information missing constitutes a deficient document.**

## Category 6: PFSs With Illegible Information

Only the defendant addresses this aspect of the PFSs and suggests that there are a number of documents that contain illegible handwriting, which constitute "no information" because one cannot discern the information sought to be conveyed. The plaintiffs do not address this argument.  **The finding of the Court is that a response, even if illegible, is compliant and therefore not**

**deficient.** To the extent that clarification must be obtained plaintiffs must expediently cooperate with any such reasonable request. It is more likely than not however that a person experienced in the subject matter will be able to decipher the answers well enough for the purpose of classifying the plaintiffs in the first instance, but for more refined information gathering clarification may be necessary. The Court will not permit unnecessary or frivolous litigation over this issue from either side.

## ADMONITION FROM THE COURT

While it is true that no Court can require both sides to agree on a lot of things, perhaps not even on anything, it has been this Court's experience in the mass litigation arena that the clients benefit most when lawyers get along on procedural matters. Litigation should be held to a minimum on issues that each side can easily agree on without compromising their respective clients' substantive interests. Clients are usually satisfied with lesser litigation costs as long as it doesn't require a diminution of their due process or other substantive interests.

Specifically to plaintiffs: Many of the issues observed by the Court in the exemplars provided could have, and can be, easily remedied with individual attention from the professional staff in the law offices representing these claimants. It strikes the Court that a lawyer would be highly unlikely to send his client a set of interrogatories propounded by the defendant and simply tell the client to "fill these out and send them to the defendant" without any assistance or

guidance whatsoever. Therefore, blank spaces, completely illegible answers, wrong forms, and other "unforced errors" make no sense.

<u>Specifically to defendant:</u> The Court understands that the PFS is a key to this mass litigation, as it is with any mass litigation. However, it should not be— and this Court won't allow it to be— a weapon used to cull down the number of plaintiffs on a technicality without recalcitrance on the part of individual plaintiffs. In pharmaceutical litigation, it often ferrets out the opportunists that did not actually take the subject drug. Here, if it ferrets out the opportunists that did not actually grow any corn, that will be an excellent exercise, but the Court will be surprised if that is much of an issue in this litigation, or to the extent it is in pharmaceutical litigation. Dismissal of a plaintiff's case on non-meritorious grounds must be as measured as it is to strike the defendant's pleadings.

## **CONCLUSION**

Therefore, it is the Court's objective that the rulings above will provide the parties with a way forward on all of the PFSs submitted and yet to be submitted and/or resubmitted.

The expectation of the Court, to further guide the parties, is that the only category that will create much discussion for the parties will be Category 2 having to do with PFSs that are missing information. The Court's direction is clear, but without more exemplars, advocates will have room to argue. As contemplated by the discussion between the Court and the parties at the last two status

conferences, both sides will have to work hard to reduce the amount of litigation in this area.

As the Second Revised Scheduling and Discovery Order (Doc. 159) currently contemplates, the plaintiffs must cure the deficiencies identified above within the cure period and so must complete a *new* PFS on the MDL approved PFS form no later than October 19, 2016 (21 days from the docketing of this Deficiency Order). The plaintiffs shall also file a Cure Notice with the Court no later than October 26, 2016 (28 days from the docketing of this Deficiency Order). The Cure Notice shall identify the following: (a) PFSs that have been cured in accordance with the Deficiency Order and (b) PFSs which are complete as initially served. The Cure Notice shall also utilize the same table developed by Syngenta as seen in (Doc. 154-1).

Unfortunately, the Second Revised Scheduling and Discovery Order, as recited by the Court herein, agreed upon and submitted by the parties, and adopted by the Court, does not contemplate the kind of conferring directed by the undersigned, referred to above, and which this Court believes to be critical to the proper advancement of this litigation. Therefore, the Second Revised Scheduling and Discovery Order (Doc. 159) is **AMENDED**, (*sua sponte*), at Section II B, fourth bullet point, as follows:

**Cure Period: The plaintiffs will have until October 19, 2016, to cure the identified deficiencies (21 days from the docketing of the Deficiency Order). The plaintiffs should make every effort to cure the identified**

**deficiencies. However, to the extent that the Deficiency Order leaves good faith disputes between the parties regarding whether one or more PFSs retain deficiencies, including but not limited to Category 2 (missing information), the parties shall meet and confer, with a good faith intent on each side, to attempt to reasonably resolve the issues remaining for a period of time not to exceed seven business days from the docketing of the Deficiency Order. At the start of the meet and confer period, the parties shall jointly file with the Court a categorical list of the disputed matters being addressed during the meet and confer period. At the end of the meet and confer period, the plaintiffs shall file with the Court an updated Cure List and the parties shall file with the Court a categorical list of all cases, if any, not resolved by the meet and confer process. Within seven business days thereafter, each party shall file with the Court a copy of each disputed PFS and a brief statement (not to exceed approximately 1/2 of a page) of that party's position in the dispute.**

The meet and confer process added to the order at Doc. 159 is to be considered an adjunct to the procedures originally provided for therein and consistent with the discussions during the status conferences. The meet and confer process is not meant to replace those procedures.  Furthermore, the

Court's observation of the progress of the parties will determine whether any other remedial measures will be imposed.

**IT IS SO ORDERED.**

**Signed this 28th day of September, 2016.**

Digitally signed by
Judge David R.
Herndon
Date: 2016.09.28
11:04:42 -05'00'

**United States District Judge**