IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

-------------------------------------------------------------

**IN RE SYNGENTA MASS TORT ACTIONS**

-------------------------------------------------------------      **Judge David R. Herndon**

**This Document Relates to:**
*Poletti, et al. v. Syngenta AG, et al.*
No. 3:15-cv-01121-DRH

### MEMORANDUM AND ORDER

Before the Court is Syngenta's motion to dismiss plaintiff's First Consolidated Amended Complaint (Doc. 59) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 115). Plaintiffs oppose the motion (Doc. 133). Syngenta raises numerous arguments regarding why plaintiffs' complaint should be dismissed, only two of which are worthy of close analysis, and are analyzed fully below. Based on the following, the Court **DENIES** Syngenta's motion to dismiss and request for oral argument.

### I. BACKGROUND

**A. Introduction**

In March 2016, Roland Poletti, et al.[1] ("plaintiffs") filed their First Consolidated and Amended Complaint against Syngenta,[2] under the Class Action

---

[1] In February 2016, the Court ordered the consolidation of all existing plaintiffs in *Poletti, et al. v. Syngenta Corp., et al.*, No. 3:15-cv-1221-DRH; *Brase Farms, Inc., et al. v. Syngenta Corp., et al.*, No. 3:15-cv-1374-DRH; and *Wiemers Farms, Inc., et al. v. Syngenta Corp., et al.*, No. 3:15-cv-01379-DRH. The Court directed the plaintiffs to file an amended consolidated complaint in the

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[3]  Plaintiffs alleged that Syngenta prematurely commercialized the genetically modified corn trait "MIR162,"[4] and in doing so, acted negligently, recklessly, and deceptively, causing harm to plaintiffs and contaminating the entire United States corn supply. Plaintiffs further contended that—at the time of the alleged acts—Syngenta knew of and foresaw the risk to plaintiffs, and thereby breached the duty owed in preventing the harm alleged (Doc. 59).

### B. MIR162 & VIPTERA™ Controversy

Plaintiffs note that United States exportation of corn amounts to billions of dollars annually, and because the U.S. corn marketing system is commodity-based,[5] the highest standards of purity are required to be maintained (*Id*. at 282). Moreover, plaintiffs point to the premature release of Agrisure VIPTERA™ as the

---

lead case, *Poletti. See* Case Management Order, at 1, Brase Farms, Inc., et al., Syngenta Corp., et al., No. 3:15-cv-1374 (S.D. Ill. Mar. 10, 2016), ECF No. 62.

[2] Defendants Syngenta AG, Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC, Syngenta Biotechnology, Inc., and Syngenta Seeds, Inc., will be collectively known as "Syngenta" for purposes of brevity.

[3] The original state-court actions were removed by Syngenta pursuant to 28 U.S.C. § 1453 from the Third Judicial Circuit of Madison County, Illinois, case no. 15-L-1219.  *See* Doc. 1.

[4] The Environmental Protection Agency ("EPA") Fact Sheet for Event MIR162 Maize describes MIR162 maize as a new plant-incorporated protectant product that produces its own insecticidal protein within the corn plant which is derived from the naturally occurring soil bacterium Bacillus thuringiensis (Bt).  The insecticidal protein Vip3Aa20 expressed in MIR162 controls certain lepidopteran pests of corn.  MIR162 target pests include: corn earworm, fall armyworm, armyworm, beet armyworm, black cutworm, and western bean cutworm. *https://www3.epa.gov/pesticides/chem_search/reg.../fs_PC-006599_26-Dec-08.pdf*

[5] Corn grown by farmers throughout the U.S. is commingled, consolidated, and transported from several thousand farms before it is hauled to distribution centers and shipped overseas.

sole cause of foreign export-market refusal to import U.S. grown corn, and further maintain that heavy financial losses have been incurred (*Id.* at 282).

In 2009, Syngenta introduced and sold the genetically modified ("GMO") corn trait MIR162 to U.S. farmers under the trade name Agrisure VIPTERA™; at the time, MIR162 was barred for sale in several countries, including China—where it was not yet approved for purchase or consumption (*Id.*). Agrisure VIPTERA™ and its variant DURACADE™, were licensed and marketed by Syngenta; and, both products contained multiple genetically enhanced modified traits and were sold to seed manufactures for their insect resistance capabilities (*Id.* at 283). Syngenta's corn modification process used biotechnology to insert genetic substances into corn seeds from the bacterium *Bacillus thuringiensis* *("Bt")*, in order to produce certain proteins that have insecticidal properties. One of the produced proteins, Vip3A, binds to the pest insect's midgut and forms pores which kill the insect before crop damage takes place. VIPTERA™'s bio-engineered origin required foreign regulatory approval before it was able to be cultivated or imported outside of the United States (*Id*. at 290-91).

Plaintiffs vie that Syngenta intentionally and recklessly released VIPTERA™ and DURACADE™ into the U.S. corn market before gaining MIR162 GMO approval (*Id.* at 283). Allegations begin in the spring of 2010, when plaintiffs charge that Syngenta decided to release VIPTERA™ for the 2010-2011 corn season; all while lacking the necessary approval for import into foreign markets, namely China—who, in 2009-2010, imported 1,296 thousand metric tons of U.S.

corn (*Id.* at 291-92).[6]  Plaintiffs claim that at the time of VIPTERA™'s release, Syngenta assured consumers that import approval in Japan and European Union countries was pending—but made no mention in regard to China (*Id.*).  Plaintiffs alleged that in 2012 Syngenta misinformed U.S. corn farmers, grain elevators, grain exporters, landowners, the general public, and even Syngenta's own investors, by directing all to believe that MIR162 GMO approval from China was forthcoming (*Id.* at 284).  The misinformation was followed by Syngenta's creation of documentation that implicitly established the belief that MIR162 had been accepted by Chinese importers.  U.S. corn farmers—upon reliance on Syngenta's statements—immediately began to plant corn containing MIR162; however, China did not approve MIR162 until 2014 (*Id.*).

### B. U.S. Corn Crop Contamination

Factual evidence suggests that planting, harvesting, and transporting assorted corn varieties together creates a risk of contamination, commingling, and cross pollination from one corn plant to another, resulting in an exchange of genetic traits (*Id.* at 292-94).  Plaintiffs allege that notwithstanding this risk, Syngenta offered "a 'side-by-side program' which encouraged farmers to plant VIPTERA corn side-by-side with other corn seed."  This encouragement of side-by-side planting of VIPTERA™ and non-VIPTERA™ corn led to the comingling of VIPTERA™ GMO corn with the wide-ranging U.S. corn supply (*Id.*).

---

[6] *See* World Agricultural Supply and Demand Estimates Report http://www.usda.gov/oce/commodity/wasde/

In November 2013, the first shipments of MIR162-infused GMO corn arriving in China were not approved for import and were subsequently rejected (*Id.* at 297). Refusal continued until December of 2014; and plaintiffs claim that Syngenta's actions "shut down, for all intents and purposes" the 2014 U.S. corn market to China "causing billions of dollars of damages to U.S. exporters, including farmers, farm landowners, and farming entities" (*Id.* at 285). In fact, plaintiffs point to a National Grain and Feed Association ("NGFA") statement indicating that Syngenta's premature release of VIPTERA™ corn cost the U.S. corn market between $1 Billion and $3 billion dollars due to rejection and seizures of containers and cargo ships transporting MIR162 GMO corn to China alone (*Id.* at 286).

**C. Request to Stop DURACADE™ Release**

Plaintiffs suggest that Syngenta continued "irreparable damage to U.S. exports of corn to China" by releasing a second version of MIR162 GMO corn—without Chinese approval—under the trade name DURACADE™ (*Id.* at 286-87). In anticipation of its release, the NGFA and North American Export Grain Association ("NAEGA") released a joint statement requesting that Syngenta halt its release of DURACADE™ (*Id.* at 287). The statement explained that both organizations are gravely concerned about the serious economic harm resulting from Syngenta's current approach to VIPTERA™ management.[7] (*Id.* at 287).

---

[7] The joint NGFA and NAEGA statement expressed, in part, "Further, the same concerns now transcend to Syngenta's intended product launch plans for DURACADE, which risk repeating and extending the damage. Immediate action is required by Syngenta to halt such damage." Doc. 59 at 287.

Plaintiffs contend that regardless of NGFA and NAEGA requests to halt production, Syngenta nevertheless released DURACADE™, further jeopardizing the Chinese import market (*Id.* at 287).

### D. Claims Asserted/Causes of Action

Plaintiffs assert claims—against Syngenta—of public nuisance, private nuisance, negligence, products liability, tortious interference with business actions, strict liability as to certain classes of plaintiffs, and the violation of various state deceptive trade practices and consumer protection acts (*Id.* at 302-30).[8] Causes of action for damages include: the premature release of VIPTERA™ and DURACADE™ into the U.S. corn and corn seed supply; the materially misleading statements made relating to approval status of MIR162 in China upon which plaintiffs relied; the failure to disclose the material fact that MIR162 was not approved for import into China; and the continuing and future MIR162 contamination of the U.S. corn and seed supply (*Id.* at 288-89). Plaintiffs seek compensatory, consequential, and punitive damages, and injunctive relief (*Id.* at 331-33).

### E. Syngenta's Motion to Dismiss/Plaintiffs' Response in Opposition

Syngenta filed a motion to dismiss plaintiffs' complaint for lack of personal jurisdiction and failure to state a claim for which relief may be granted (Doc. 115).

---

[8] Plaintiffs' Count VI, Strict Liability, against Syngenta is in reference to plaintiffs from: AL, AZ, AR, CA, CO, FL, ID, IL, IN, IA, KS, KY, MN, MS, MO, NE, NV, NY, ND, OH, OK, OR, PA, SC, SD, TN, TX, and WI. Counts VII-XIX relate to deceptive trade practices and/or consumer protection acts from the following states: AR, CA, CO, FL, GA, ID, IL, KY, MN, NY, NC, OR, and SC (Doc. 59 at 309-330).

In its memorandum in support, Syngenta discusses several legal principals which it believes warrants a grant of dismissal (Doc. 116). Namely, non-Illinois plaintiffs' lack of personal jurisdiction; and, the bar of plaintiffs' claims by the "Stranger" and "Contractual" Economic Loss Doctrines.[9] (*Id.*)

Plaintiffs have filed a response to Syngenta's motion to dismiss and argue, inter alia, that Syngenta waived its "lack of personal-jurisdiction defense" when it compelled discovery coordination and complied with the Court's orders regarding discovery (Doc. 133). In its reply, Syngenta proclaims, among other things, that "[p]laintiffs' waiver arguments are baseless;" because waiving personal jurisdiction by proceeding with pretrial activities would only occur if Syngenta's actions gave plaintiffs belief it would proceed in defending the suit on the merits. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

---

[9] Syngenta also argues that plaintiffs' complaint should be dismissed due to preemption pursuant to 7 U.S.C. § 71, United States Grain Standards Act; absence of duty to control third-party post-sale conduct; absence of duty to refrain from trade; preemption of failure-to-warn-liability pursuant to 7 U.S.C. ch. 6 § 136 et seq, Federal Insecticide, Fungicide, and Rodentcide Act ("FIFRA"); failure to state a claim regarding DURACADE™; failure, as a matter of law, of all strict-liability and products-liability claims; failure to state a claim for tortious interference; requisite dismissal of private and public nuisance claims as a matter of law; and, requisite dismissal of consumer protection claims (Doc. 116). After thorough review, the Court finds that plaintiffs' claims survive the 12(b)(6) motion to dismiss standard. Therefore, Syngenta's most compelling arguments for dismissal of plaintiff's complaint warrant discussion.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction under 12(b)(2)

When personal jurisdiction is challenged pursuant to Fed. R. Civ. P. 12(b)(2), plaintiffs bear the burden of establishing personal jurisdiction over defendants. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003). If the issue of personal jurisdiction is raised by a motion to dismiss and decided on written material rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* The Court must take as true all well-pleaded facts alleged and resolve any factual disputes in favor of the plaintiff. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7$^t$th Cir. 2010).

Illinois' long-arm statute enables personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States Constitutions. *See* 735 Ill. Comp. Stat. 5/2-209(c) (2016) (courts may exercise jurisdiction on any other basis now or hereafter permitted by Illinois Constitution and Constitution of United States); *see also Kipp v. Ski Enterprise Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (stating governing Illinois statute permits courts to exercise personal jurisdiction up to limits of Due Process Clause of Fourteenth Amendment). The Illinois Constitution's due process and equal protection guarantee—Ill. Const. art. I, § 2—permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the

defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (Ill. 1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id.* The Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1877), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (quoting *Int'l Shoe*, 326 U.S. at 316). The defendant must have purposefully established such minimum contacts with the forum state

such that it "should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In deciding whether exercising jurisdiction offends traditional notions of fair play and substantial justice, the Court may also consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." A*sahi Metal Indus. Co., Ltd. V. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987).

What personal jurisdiction means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Hyatt*, 302 F.3d at 716 (citing *Helecopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8,9 (1984)). General jurisdiction, on the other hand, may exist even in suits that do not rise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Hyatt*, 302 F.3d at 713; *Helicopteros Nacionales*, 466 U.S. at 416.

**B. Failure to State a Claim under 12(b)(6)**

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court

explained in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(6)(b) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Notice pleading remains all that is required in a complaint, even though federal pleading standards were overhauled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.' " *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted).

The Seventh Circuit offers further instruction on what a civil action must allege to endure 12(b)(6) dismissal. In *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated the standard: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid." *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011).

### III. ANALYSIS

**A. Choice of Law**

In a diversity case, the Court applies the choice of law rules of the state in which the district court sits. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under

Illinois choice of law rules, litigants can stipulate to which substantive law applies to their case so long as the stipulation is reasonable.  *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 187); *see also Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n.6 (7th Cir. 1995).  The parties have cited to Illinois law, thus, Illinois law applies.  To the extent that the Illinois Supreme Court has not yet spoken to any of the issues before the Court, the Court shall apply the law as it would predict the Illinois Supreme Court would if deciding the case.  *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) (stating that duty of federal court in diversity suit is to predict what state Supreme Court would do if presented with identical issue).

**B. Personal Jurisdiction Waived By Syngenta**

Syngenta's primary argument for the dismissal of non-Illinois plaintiffs' claims is that—under the Due Process Clause—the Court lacks personal jurisdiction to adjudicate, *i.e.*, Syngenta is not subject to general personal jurisdiction in Illinois, nor specific personal jurisdiction in Illinois for non-Illinois claims brought by non-Illinois plaintiffs.  Further, Syngenta argues that under *Mobile Anesthesiologists* 623 F.3d at 440, it has not waived a lack of personal jurisdiction defense argument by complying with court-ordered discovery processes.[10]

---

[10] In *Mobile Anesthesiologists*, defendant filed a motion to continue a preliminary injunction hearing and requested expedited discovery scheduling, because a witness was unable to testify on the previously set date of the proceeding.  *See Mobile Anesthesiologists*, 623 F.3d at 442-43.  Two weeks later, defendant filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, which prompted plaintiffs to contend that defendant waived the right to argue lack of personal

*Mobile Anesthesiologists* is undoubtedly distinguishable from the instant matter. Here, *Syngenta has induced and complied with pretrial discovery coordination, and has submitted itself to the Court for discovery purposes by*: moving for the adoption of a particular form of discovery coordination[11]; filing a reply regarding its motion for adopting the coordination order[12]; participating in a status conference regarding involvement and agreement of discovery coordination[13]; complying with the Court's order to provide a list of potential candidates to serve as special master in case of settlement[14]; filing a response in

---

jurisdiction. *Id* at 443. The Seventh Circuit was not persuaded, the court reasoned that "[the defendant's] preliminary actions [of engaging in pretrial litigation activity] d[id] not come close to what is required for waiver or forfeiture" of personal jurisdiction. *Id.* Rather, in order to waive personal jurisdiction defense, "a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.* (citing *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (explaining if defendant, *by words or actions*, misleads plaintiff into thinking the he is content with court plaintiff's suit is filed or if court is involved to the point that wasted judicial effort would occur if case is sent to another locale, "conventional principles of waiver or equitable estoppel come into play and if invoked by the plaintiff [to] block the challenge")). In other words, defendant had the right to request more time to ascertain: who he was being sued by, and why he was being sued when faced with an imminent preliminary injunction hearing and being unable to deliver its key witness. *Id.*

[11] On January 8, 2016, Syngenta filed a motion for entry of a Multi-District Litigation ("MDL") Coordination Order (Doc. 32) requesting the adoption of the form of discovery coordination entered in the pending District of Kansas MDL case *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL-JPO (D. Kan. Consolidated Dec. 11, 2014); which was granted by this Court (Doc. 44) prior to plaintiffs' First Consolidated and Amended Complaint (Doc. 59).

[12] On January 29, 2016, Syngenta filed a reply to Response to Motion re Doc. 32, Motion for Order to Syngenta's Motion for Entry of MDL Coordination Order (Doc. 43).

[13] On February 18, 2016, counsel for Syngenta participated in status conference (*see* Doc. 50, 53) and discussed with plaintiffs, inter alia, ESI protocol and issues with electronic records in possession of farmers; the MDL coordination order and participation agreement; concerns raised regarding certain exporter entities; and consent to the filing of plaintiffs amended consolidated complaint.

[14] On March 11, 2016, Syngenta filed a Response to the Court's February 25, 2016 Coordination Order Relating to Settlement (Doc. 66) and provided the names, qualifications, and rates of three potential special masters for court-ordered settlement discussions.

opposition regarding deposition time for witnesses[15]; requesting to file certain exhibits under seal[16]; filing a response in opposition to a request for additional time to depose a witness[17]; and participating and filing a joint status report regarding trial discovery.[18]

All preliminary pretrial discovery actions described took place in advance of Syngenta's filing of its motion to dismiss for lack of personal jurisdiction. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) (explaining failure to enter timely objection to personal jurisdiction constitutes waiver of objection under Fed. R. Civ. P. 12(h)(1)).[19] Moreover, all of the actions described above present non-Illinois "plaintiff[s] [with] a reasonable expectation that [Syngenta] will defend the suit on the merits" and has "caus[ed] the [C]ourt to go [through] some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists*, 623 F.3d at 443.

---

[15] On March 23, 2016, Syngenta filed a Response in Opposition to Plaintiffs' Motion Concerning Allocation of Deposition Time for Syngenta Witnesses and argued that under the terms of Court's Coordination Order, there is no basis to dictate time allowed for questions in coordinated Syngenta/Plaintiff actions (Doc. 83).

[16] On March 23, 2016 Syngenta filed a motion for leave to File Under Seal Exhibits 1-4 (Doc. 88), which was granted by the Court (see Doc. 90).

[17] On March 28, 2016, Syngenta filed a response in Opposition to Plaintiffs' Motion To Compel Additional Deposition Questioning Time for Witness Chuck Lee, Head of Corn, North America (Doc. 97).

[18] On April 15, 2016, Syngenta filed a Joint Status Report as to Trial Discovery Pool Selection Process (Doc. 108) pursuant to the Court's February 26, 2016 discovery order.

[19] Although Syngenta previously filed a motion to dismiss for lack of personal jurisdiction on February 5, 2016 (Doc. 45), the Court terminated the motion as moot in a case management order regarding consolidation matters on March 10, 2016 (Doc. 63).

"A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Compagnie*, 456 U.S. at 703. The method a court uses to determine whether it has personal jurisdiction can include legal rules and presumptions, as well as direct fact-finding. *Id.* at 707. It is important to remember—as plaintiffs have argued—Syngenta consented to litigate against non-Illinois plaintiffs in the Southern District of Illinois as a CAFA mass action pursuant to section 1332(d), and removed the case from state court as such. A demonstration of historical facts makes it clear to the Court that it has personal jurisdiction over Syngenta. *Id.* at 704 (stating "certain factual showings will have legal consequences"). No deprivation of fairness or justice will take place if Syngenta continues proceedings in the same lawsuit it voluntarily removed and consented to litigating in this Court. Syngenta should have known that its actions "may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.* at 704-05.

### C. Economic Loss/*Moorman* Doctrine Does Not Prohibit Plaintiffs' Claims

Substantively, Syngenta claims that plaintiffs' allegations are barred by the economic loss doctrine ("ELD").[20] In Illinois, solely economic losses are generally

---

[20] The ELD adopted in *Moorman* prohibits plaintiffs from recovering negligence damages for economic losses that do not involve personal injury or property damage. *Moorman*, 91 Ill. 2d at 69 (stating in actions for negligence manufacturer liability is limited to damages for physical injury; there is no recovery for economic loss alone). The rationale behind the decision is that tort law is not intended to compensate litigants for monetary losses suffered as a result of duties which are owed to them as a result of a contract entered into. Therefore, losses related to a consumer's disappointed expectations due to "deterioration, internal breakdown, or nonaccidental cause[s] lie[] in contract."[20] *Id.* at 86.

not recoverable in tort actions.[21]  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (Ill. 1982).    However, three exceptions to the ELD exist: (1) where plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where plaintiffs' damages are proximately caused by defendant's intentional, false representation, *i.e.*, fraud; and (3) where plaintiff's damages are proximately caused by negligent misrepresentation of defendant in the business of supplying information for the guidance of others in their business transactions.  *See American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 927, n. 4 (7th Cir. 2003); *Trans State Airlines v. Pratt & Whitney Can., Inc.*, 177 Ill. 2d 21, 26-27 (Ill. 1997) (citing *Chi. Flood*, 176 Ill. 2d at 186-87).

i. Negligent Misrepresentation Exception to ELD

>In Illinois, the elements of negligent misrepresentation are:
>
>(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information.

*See F:A J Kikson v. Underwriters Lab., Inc.,* 492 F.3d 794, 801 (7th Cir. 2007) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.,* 218 Ill. 2d 326, 335, 843 N.E.2d 327, 332 (Ill. 2006)); *Board of Educ. of City of Chi. v. A, C and S,*

---

[21] An economic loss is defined as " 'damages for inadequate value, costs or repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property.*'"  *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 198-99 (Ill. 1997) (emphasis in original) (quoting *Moorman*, 91 Ill. 2d at 82).

*Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 428, 591 (Ill. 1989) (stating negligent misrepresentation has essentially same elements of fraudulent misrepresentation except defendant mental state is different).

ii. Plaintiffs sufficiently allege Negligent Misrepresentation

In their First Consolidated and Amended Complaint, plaintiffs alleged that Syngenta misinformed farmers—such as plaintiffs—and other individuals within the farming and corn export community that MIR162 GMO approval from China was imminent years before it was actually authorized [22] [23]; Syngenta knew of and foresaw the risk to plaintiffs by purporting misinformation relating to Chinese MIR162 approval and was negligent when it breached the duty owed in preventing harm; Syngenta was intent on financial gain when it induced plaintiffs to act by purchasing and planting Agrisure VIPTERA™ and DURACADE™ before Chinese import approval; that plaintiffs relied on Syngenta's statements and documents declaring Chinese import approval of MIR162 was "days away"; that plaintiffs were damaged by the rejection of U.S. corn by China after relying on Syngenta's materially false statements regarding MIR162 approval; and that Syngenta, as a

---

[22] "Although Syngenta, during times relevant to this complaint, lacked approval to import corn or other products containing MIR162 into China, it nevertheless misinformed farmers such as the Plaintiffs about that fact, as it similarly misinformed grain elevators, grain exporters, landowners, Syngenta's own investors, the farming community, and the general public—leading all to believe, including these Plaintiffs, that approval from China was imminent.  For example, during Syngenta's first quarter 2010 earnings conference call, Syngenta CEO Michael Mack stated '[t]here isn't outstanding approval for China, **which we expect to have quite frankly within the matter of a couple of days** . . . we know of no issue with that whatsoever . . . .'" Doc. 59 at 284 (emphasis in original).

[23] "Despite knowing MIR162 had not yet been approved for import into China, Syngenta created and distributed forms and documents that imply MIR162 is accepted in China."  Doc. 59 at 284.

product manufacturer in the commercial grain industry, had a duty to disseminate accurate information about the import/export status of its products.

Taking as true all well-pleaded facts in plaintiffs' complaint, *see* 735 Ill. Comp. Stat. 5/2-615 (2016), plaintiffs do not seek damages for disappointed commercial expectations of a product purchased from Syngenta. Rather, plaintiffs seek damages proximately caused by negligent misrepresentations of Syngenta who—in commercializing, marketing, and advertising MIR162 as approved for export in China—placed itself in the business of supplying information for guidance in U.S. farming and corn exporting business transactions.[24] *See* Restatement (Second) of Torts § 552 (1977) (one who in course of business or in which he has pecuniary interest, supplies false information for guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information). Plaintiffs have met the standard of pleading, with sufficient particularity, facts that establish elements of negligent misrepresentation, including what misrepresentations were made, when they were made, who made them, and who they were made to. *See Board of Educ. Chi.*,

---

[24] "The standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon or the situation of the party relying upon it. Any user of commercial information may reasonably expect the observance of this standard by a supplier of information to whom his use is reasonably foreseeable."  See Restatement (Second) of Torts § 552, Explanatory Notes, comment a.

131 Ill. 2d at 457.  Therefore, the negligent misrepresentation exception to the Moorman ELD doctrine applies to this case, and plaintiffs' claims are permitted.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Syngenta's motion to dismiss and request for oral argument (Doc. 115).  Plaintiffs complaint has sufficiently alleged claims against Syngenta that survive both Rule 12(b)(2) and Rule 12(b)(6) Fed. R. Civ. P. pleading standards.

**IT IS SO ORDERED.**

Signed this 20th day of February, 2017.

Judge Herndon
2017.02.20
14:40:32 -06'00'

**UNITED STATES DISTRICT JUDGE**